UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Cherie W. Lambert, | : | Case No. 5:08CV1908 |
| | : | |
| Plaintiff | : | Judge Christopher Boyko |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claim for supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in her favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff applied for benefits on September 7, 2004, alleging an onset date of disability of July 1, 2000.[1]

Upon denial of plaintiff's claim on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff

---

[1] Although the transcript carries a certification "that the documents annexed hereto constitute a full and accurate transcript of the entire record of proceedings relating to this case" it does not contain a copy of a Disability Report - Adult which this Court knows is usually completed by the claimant along with the application and contains a statement of the alleged disabling impairments. However, copies of the Disability Determination and Transmittal forms completed by state agency physicians indicate that the plaintiff's alleged impairments were affective disorders and migraine.

was represented by counsel, was held on September 14, 2007. Also testifying at that proceeding was a vocational expert, Mr. Kevin Yi.

When asked by the ALJ why she became unable to work as of her claimed onset date the plaintiff responded "Just, I started taking care of my husband[2] and my, I've just started having mental issues." The ALJ followed that with a question concerning physical impairments, and the plaintiff identified acid reflux, seasonal allergies and migraine headaches. She then added that she has had surgeries on both elbows, for carpal tunnel, and on the right hand for trigger finger, for which she wears a finger brace. When questioned by her counsel the plaintiff also mentioned that she has been having problems with her back.

On February 28, 2008 the ALJ entered his opinion denying plaintiff's claim. That decision became defendant's final determination upon denial of review by the Appeals Council on July 11, 2008. The ALJ's "Findings of Fact and Conclusions of Law" were:

> 1. The claimant has not engaged in substantial gainful activity since September 17, 2004, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: right lateral epicondylitis after surgery in October 2001 and left lateral epicondylitis after surgery in October 2005 (Exhibits 12F, 19F, 21F); right carpal tunnel syndrome after neurolysis and "mild" left carpal tunnel syndrome (Exhibits 5F, 12F); left chondromalacia patella (Exhibits 23F, 24F); a major depressive disorder and a general anxiety disorder (Exhibits 1F, 3F, 10F, 14F, 27F, 29F, 33F) (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[2]The plaintiff's husband has serious health problems, and as of the time that the plaintiff applied for SSI was receiving Social Security disability benefits.

4. The claimant retains the residual functional capacity to a range of perform [sic] light work. Specifically, she can except [sic] she can lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally and can sit, stand and/or walk 6 hours each in an 8-hour work day. She can perform frequent handling and fingering with her right hand. She is limited to simple, routine, low stress tasks that involve limited and superficial interaction with supervisors, co-workers and the public. She is precluded from tasks that involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

5. If the claimant has past relevant work (20 CFR 416.965), she is unable to do it.

6. The claimant was born on August 17, 1963. She was 41 years old on the date her application was filed and is 44 years old as this decision is issued, a "younger" individual (20 CFR 416.963) at all relevant times.

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part, 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, on or after September 17, 2004, the date the application was filed (20 CFR 416.920(g)).

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are

supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).

The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

On this appeal plaintiff's counsel first propounds the general issue of "Was Administrative Law Judge Round's decision to deny Plaintiff Supplemental Security Income based on substantial evidence?" He later advances the following arguments:

1. The substantial evidence on file documents that Ms. Lambert lacks the ability to stand and/or walk for six hours in an eight hour work day, and, thus, she cannot perform light work as determined by Judge Round.

2. Given Ms. Lambert's inability to perform the standing and/or walking required by light work, in addition to her other severe impairments, there are no jobs in the national economy which she is able to perform.

3. Judge Round committed reversible error in failing to order a consultative examination in this case.

In support of the first and second claims of error the plaintiff relies upon the combination of

a form completed by a treating physician, Dr. Vincent Perkowski, for the county welfare authorities under date of October 13, 2004 and SSR 83-10.

SSR 83-10 in pertinent part, provides:

> *Light work.*  The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs.  A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time.  The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

This Court has some difficulty with the foregoing.  To begin with, the Ruling defines "frequent" as a range from one-third (33%) to two-thirds (67%) of the time.  Having defined that term as covering a range of time it then states that light work requires "being on one's feet <u>up to</u> two-thirds of a workday (emphasis added), the use of the term "up to" again signifying that a range of time is contemplated.  Nevertheless, the Ruling then morphs the range of up to 67% of a workday to a requirement of standing/walking up to 6 hours in an 8-hour workday, 75% of that day.

5

Query—what happened to a range of 33% to 67%, and how did the 67% outer limit of the definition of frequent become 75%? In addition, this conception of light work, limiting the sitting component to two hours intermittently during an 8-hour workday, is inconsistent with the primary definition in the Ruling which provides that light work includes a job which "involves sitting most of the time but with some pushing or pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." Most important, this Court finds the requirement to be able to stand/walk for 6 hours in an 8-hour workday to conflict with the regulatory definition of light work, found at 20 C.F.R. §404.1567(b), which provides that light work may require "a good deal of walking or standing." This Court cannot equate a good deal of walking or standing with doing so 75% of an 8-hour workday. To this Court three fourths of an 8-hour workday goes well beyond a "good deal," and at the least, is the greatest part of that day.

While this court recognizes that ALJs are obliged to follow Social Security Rulings, this Court does not believe that a federal court is similarly obliged when a Ruling is both internally inconsistent as well as inconsistent with the terms of the regulation under which it is promulgated.

This Court, however, need not resolve these misgivings as to SSR 83-10, as this Court finds the ALJ's decision vis-s-vis the plaintiff's physical state to be both totally deficient and in all probability erroneous.

On the erroneous side, the ALJ stated "On October 13, 2004 Dr. Perkowski said that Mrs. Lambert could do the full range of medium work (Exhibit 1F)." Exhibit 1F is the medical records of Dr. Perkowski covering the period from January 5, 1999 to October 13, 2004, and is 79 pages in length. It would appear that the document which the ALJ intended to refer to is the form the doctor completed for the welfare authorities. Nowhere therein did the doctor state that the plaintiff could

6

perform a full range of medium work, nor would the exertional capabilities he noted in that form support that conclusion. This Court reviewed the balance of Exhibit 1F, and did not find anything therein reflecting the doctor's opinion that the plaintiff has physical capabilities commensurate with those required for medium work.

On the totally deficient side, the entirety of the ALJ's discussion of the plaintiff's physical impairments was:

> In September 2004, Ms. Lambert was 65" tall and weighed approximately 230 pounds. Dr. Perkowski noted that her health status was good with treatment, but that family stress affected her ability to deal with the public and to interact socially (Exhibit 10F9). On January 31, 2005, she was alert and oriented with good insight, judgment, and memory. She had full range of motion, full muscle strength, normal gait, and normal sensation. Ms. Lambert reported that her headaches did not cause photophobia, phonophobia, nausea, emesis, weakness, syncope, or vision impairments (Exhibit 10F4).
>
> On October 13, 2004, Dr. Perkowski said that Ms. Lambert could do the full range of medium work (Exhibit 1F).
>
> Ms. Lambert began experiencing worsening left elbow pain in 2005. She was diagnosed with lateral epicondylitis and initially treated conservatively with injections and home exercises (Exhibit 19F10-11). On October 18, 2005, Daniel Moretta, D.O., performed surgery in the form of radio-frequency coblation of the extensor tendon of her left elbow (Exhibit 21F). After surgery, Ms. Lambert was observed to have increased range of motion, with decreased pain at the elbow (Exhibit 22F18). Ms. Lambert's physical therapist noted that she had had [sic] met all of her goals by December 2005 (Exhibit 22F2-3).
>
> In January 2006 Ms. Lambert was diagnosed with left chondromalacia patella after she complained of knee pain lasting one week (Exhibit 23F6). The diagnosis was confirmed by an MRI of her left knee (Exhibit 24F). She was advised to use a cane. On February 22, 2006, however, she was observed to walk without a limp (Exhibit 23F2).
>
> There is no physical residual functional capacity assessment by the Bureau of Disability Determination in evidence.

This cursory recitation provides a reviewing court with no insights as to how the ALJ came to conclude that the plaintiff possesses the residual functional capacity to "lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally and can sit, stand and/or walk 6 hours in an 8-hour workday." Further, it provides no insights into the ALJ's view as to the import of SSR 83-10 as it applies to the plaintiff (if he considered it at all), particularly considering that he alluded to the plaintiff having the ability to "sit, stand and/or walk 6 hours in an 8-hour workday" whereas SSR 83-10 refers to the ability to stand/walk for six hours with intermittent sitting during the other two hours.

This being so, this Court is unable to find that the ALJ's decision is supported by substantial evidence, from which it follows that the defendant's final determination cannot be upheld.

On the other hand, this Court cannot find that the plaintiff is entitled to final judgment in her favor awarding her the benefits she seeks.

The form completed by Dr. Perkowski upon which the plaintiff places much reliance is equivocal. On the line asking whether the plaintiff's standing/walking are affected by her physical condition "X" marks appear in both the "No" and "Yes" boxes, and in the "Yes" box there is a barely legible entry which may read "wrong."

In addition to this, under date of June 24, 2003 Dr. Michael L. Yutzy, another treating physician, issued the following "To Whom It May Concern" letter:

> I medically manage Cheri Lambert. She has been with me since 2/2000. She has major depression and is on multiple medications, and she takes care of her husband, who has severe heart disease. She has not been able to work for 3 years at least, secondary to all these problems. She has been at counseling at NOVA, you may want to get some of their records. Any questions feel free to contact my office.

Fourteen months later Dr. Perkowski issued another "To Whom It May Concern" letter reading:

> Cherie Lambert has been under my care for multiple medical concerns since October of 2003. She is on multiple medications for depression and anxiety and undergoes psychological counseling through NOVA. She has multiple social stressors which includes caring for her husband who has multiple heart conditions. Cherie continues to have a very labile emotional state. She has frequent crying spells throughout the day, and suffers from chronic insomnia.

The references by both doctors to the plaintiff's need to be at home to care for her husband, which is consistent with her testimony that this was a factor in her stopping working, certainly raises a question as to whether the plaintiff's not working is attributed to her physical/mental state or because of her husband's needs.

It is accordingly recommended that this action be remanded pursuant to the fourth sentence of 42 U.S.C. §405(g) for further proceedings, and entry of a new decision[3]

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   August 21, 2009

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d

---

[3]While upon remand all issues remain open for consideration by the ALJ, this Court is constrained to observe that the plaintiff consistently being assigned a GAF rating of 60 or above by her treating mental health professionals, merely connoting "moderate symptoms," does not support the argument advanced on this appeal that her depression is of disabling severity. This Court would also observe that while it is within the discretion of the ALJ to order any consultative examination (physical, psychological, or both) or to call upon a medical expert to testify at the supplemental hearing one or both of these might be a wise course of action.

947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).