**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHERIE RENEE LAMBERT,** | ) | **CASE NO.5:08CV1908** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | **OPINION AND ORDER** |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

An Administrative Law Judge ("ALJ") determined that Plaintiff, Ms. Cherie R. Lambert, was not disabled under Section 1614(a)(3)(A) of the Social Security Act. The decision was reviewed by a federal district court Magistrate Judge. The Magistrate Judge recommended remand for lack of substantial evidence supporting the ALJ's decision. (ECF #14) Defendant, the Commissioner of Social Security, objects to the Magistrate Judge's Report and Recommended Decision. For the following reasons, the Court REJECTS the Magistrate Judge's Report and Recommended Decision, and AFFIRMS the ALJ's decision.

1

## I. BACKGROUND

Ms. Lambert filed an application for supplemental security income on September 17, 2004, alleging disability beginning September 1, 2004.  (Tr. at 14.)  The claim was denied initially on December 20, 2004, and again upon reconsideration on April 27, 2005.  (Tr. at 14.)  Thereafter, Ms. Lambert timely filed a written request for a hearing before an ALJ on June 25, 2005.  (Tr. at 14.)

Ms. Lambert was forty-one years old at the onset of her claimed disability and forty-four years old when the ALJ found her not disabled.  (Tr. at 21.)  At the time of the ALJ's hearing, she was five feet, seven inches tall and weighed 236 pounds.  (Tr. at 445.)  Ms. Lambert suffered several physical ailments:  acid reflux, seasonal allergies, tension headaches,  migraines, arthritis, back pain, and sleep apnea.  (Tr. at 446-48, 454.)  She had suffered tennis elbow, carpal tunnel, trigger finger, and "noisy" knees, but surgeries and other treatments have been largely successful.  (Tr. at 447-48, 455.)   She also suffered mental ailments, particularly depression and anxiety, for which she had been taking medication and receiving counseling.  (Tr. at 446, 452-53.)

After the ALJ heard testimony from Ms. Lambert and a vocational expert, Mr. Yi, and reviewed all of the evidence, on February 28, 2008, the ALJ found Ms. Lambert not disabled under Section 1614(a)(3)(A) of the Social Security Act.  (Tr. at 16, 23.)  Specifically, the ALJ found evidence from Ms. Lambert's treating physician, Dr. Perkowski, that Ms. Lambert was able to perform a full range of a medium level of work.  (Tr. at 20.)  Considering all the evidence, however, the ALJ determined that Ms. Lambert could perform only limited types of light work.  (Tr. at 20-22.)  Finding that there were some light-work jobs of significant

number in the national economy that Ms. Lambert could perform, the ALJ found Ms. Lambert not disabled.  (Tr. at 22-23.)

On June 11, 2008, the Appeals Council of the Social Security Administration denied Ms. Lambert's request for review of the ALJ's decision.  (Tr. at 5.)  Pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), on August 8, 2008, Ms. Lambert filed a civil complaint against the Commissioner of Social Security in federal district court to obtain judicial review of the denial of benefits.  (Def.'s Compl. 1-2.)

On August 8, 2008, Ms. Lambert's case was assigned to a Magistrate Judge.  On August 21, 2008, the Magistrate Judge recommended that the ALJ's decision be overturned and remanded for further proceedings, finding that the ALJ did not base his determination on substantial evidence.  (Report 8-9.)  On September 4, 2009, the Commissioner of Social Security timely objected to the Magistrate Judge's Report and Recommended Decision, arguing that the ALJ's decision was based on substantial evidence and should be affirmed.  (Def.'s Objection 4, 6.)

## II.  LAW AND ANALYSIS

Review of an ALJ's determination of eligibility for Social Security benefits "is limited to determining whether there is 'substantial evidence' in the record to support the ALJ's decision and whether the ALJ applied the proper legal standards."  *Deaton v. Comm'r of Soc. Sec.*, 315 Fed. Appx. 595, 597 (6th Cir. 2009); *accord Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Here, the relevant portions of the Magistrate Judge's Report and Recommended Decision, and the Commissioner's Objection, regard only the Magistrate Judge's finding of lack of substantial evidence.  (Report 8; Def.'s Objection 2, 4.)  Therefore,

3

whether the ALJ applied the proper legal standard is not at issue.  (*See* Report 8; Def.'s Objection 2, 4.)

Factual findings of an ALJ are conclusive when they are based on substantial evidence.  *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).  Here, the Magistrate Judge found the ALJ's factual determination of Ms. Lambert's ineligibility for SSI benefits "totally deficient and in all probability erroneous."  (Report 6.)  Specifically, the Magistrate Judge found:  (1) the ALJ made erroneous findings of fact regarding Dr. Perkowski's evaluation of Ms. Lambert, which the ALJ used as a basis for his decision; and (2) the ALJ failed to give "insight" regarding how he concluded that Ms. Lambert possessed the residual functional capacity to perform medium or light work.  (Report 7-8.)  Therefore, the Magistrate Judge was "unable to find that the ALJ's decision is supported by substantial evidence."  (Report 6-8.)

For the reasons set forth below, the Court finds that the Magistrate Judge erred in his analysis of the ALJ's decision.

**A.**     **The ALJ Did Not Make Erroneous Findings of Fact**.

The ALJ found in Exhibit 1F that "[o]n October 13, 2004, Dr. Perkowski said that Ms. Lambert could do the full range of medium work."  (Tr. at 20.)  The Magistrate Judge, however, determined that the ALJ cited the wrong exhibit.  (Report 6-7.)  The Magistrate Judge then "reviewed the balance of Exhibit 1F, and did not find anything therein reflecting the doctor's opinion that the plaintiff has physical capabilities commensurate with those required for medium work."  (Report 7.)

It is irrelevant whether Dr. Perkowski's evaluation did not establish that Ms. Lambert

could perform a full range of medium work. "Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled under the Social Security Act." *Warner*, 375 F.3d at 390; *see* 20 C.F.R. § 404.1520(a)(4) (West 2010). Applying this step-by-step analysis, the ALJ determined that Ms. Lambert was not disabled at the last step of the inquiry. (Tr. at 16-22.)

The ALJ had to consider Ms. Lambert's "residual functional capacity[,] . . . age, education, and work experience to see if [she could] make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). The ALJ considered these factors and found that Ms. Lambert could perform a limited range of light work at some jobs of significant number in the national economy. (Tr. at 17-22.) Therefore, he was required to find Ms. Lambert not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("If you cannot make an adjustment to other work, we will find that you are disabled.").

The Magistrate Judge's dissatisfaction with the ALJ's understanding of Dr. Perkowski's evaluation, alone, is not fatal to the ALJ's decision because the evaluation is not the sole foundation of the ALJ's decision. (*See* Tr. at 16-22.) But, because the Magistrate Judge's recommendation is based partly on allegedly erroneous findings of fact by the ALJ, these alleged errors will be addressed.

The ALJ correctly cited to Exhibit 1F to refer to Dr. Perkowski's evaluation of Ms. Lambert. (*See* Tr. at 2, 20.) Although the Magistrate Judge was correct to note that "Exhibit 1F is the medical records of Dr. Perkowski covering the period from January 5, 1999 to October 13, 2004," the evaluation is, in fact, part of Exhibit 1F. (Report 6-7; Tr. at 2.) For some reason, at the bottom of the pages of the Transcript that span Exhibit 1F, the pages are

marked in a manner resembling the letter "E" rather than "F". (*See* Tr. at 108-76.)

Although Dr. Perkowski did not literally state in his evaluation that Ms. Lambert could perform a full range of medium work, the evaluation specifically indicates that she could do so. (Def.'s Objection 3; Tr. at 112.) Medium work is defined by the Medical Vocational Rules of Appendix 2 of the Social Security Act as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." SSR 83-10, 1983 WL 31251 (S.S.A.). "A full range of medium work requires standing or walking, on and off, for a total of approximately 6 hours in an 8 hour work day in order to meet the requirements of lifting or carrying objects weighing up to 25 pounds." *Id.*

Dr. Perkowski specifically determined that Ms. Lambert had no deficiency in her ability to sit, stand, or walk; and he determined that she was not significantly limited in pushing, pulling, bending, reaching, handling, making repetitive foot movements, seeing, hearing, or speaking. (Tr. at 112.) Moreover, Dr. Perkowski determined that Ms. Lambert could lift and carry between twenty-one and twenty-five pounds "frequently," and between twenty-six and fifty pounds "occasionally." *Id.* These findings are consistent with the definition of a "full range" of "medium" work under the Medical Vocational Rules. *Compare* (Tr. at 112) *with* SSR 83-10.

The Magistrate Judge was correct to note that "[n]owhere . . . did the doctor *state* that the plaintiff could perform a full range of medium work." (Report 7) (emphasis added). But Dr. Perkowski did not have to make a professional determination of Ms. Lambert's ability to perform a statutorily defined level of work—the ALJ makes that determination based on all of the evidence, not the treating physician. *See Warner*, 375 F.3d at 390. For these reasons, the

Court finds that the ALJ did not make erroneous findings of fact.

        **B.**      <u>**There Is Substantial Evidence Supporting the ALJ's Decision**</u>.

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Although it "is not simply some evidence, or even a great deal of evidence," it "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (internal citations and quotes omitted).

The Magistrate Judge found that the ALJ's written decision gave reviewing courts "no insights as to how the ALJ came to conclude that the plaintiff possesses the residual functional capacity to lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally and can sit, stand and/or walk 6 hours in an 8-hour workday." (Report 8.)  The Magistrate Judge also found that the ALJ's written decision gave reviewing courts "no insights into the ALJ's view as to the import of SSR 83-10 as it applies to the plaintiff." (Report 8.)  These findings are  inaccurate and based on an incorrect standard for reviewing an ALJ's decision.

        **1.**      <u>**There is evidence that Ms. Lambert could lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally and could sit, stand and/or walk 6 hours in an 8-hour workday.**</u>

Dr. Perkowski's evaluation indicates that Ms. Lambert could lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally and can sit, stand and/or walk 6 hours in an 8-hour workday.  (Tr. at 112); *supra* Part A.  The evaluation is internally inconsistent,

7

however.  (*See* Tr. at 112.)  Specifically, although the evaluation indicates that Ms. Lambert had no deficiency in her ability to sit, stand, walk, lift, and carry objects, the evaluation simultaneously indicates that her abilities to sit, stand, and walk were limited to four hours out of an eight-hour workday.  (Tr. at 112.)  These time limits do not meet the definition of a "full range" of medium work, which requires the ability to do these activities for six hours; but this does not undermine the ALJ's decision.  *See* SSR 83-10.

First, as the Commissioner suggests in objection, Dr. Perkoswki's remarks on Ms. Lambert's limited abilities to stand and walk may properly be *disregarded* because the record does not indicate any objective medical evidence of impairment to Ms. Lambert's lower extremities.  (*See* Def.'s Objection 3); *Warner*, 375 F.3d at 391 ("Dr. Sonke's conclusion regarding Warner's walking and standing abilities was not based upon objective medical evidence, as the record contains no such evidence indicating that Walker [sic] has an impairment to his lower extremities or that his carpal tunnel syndrome affected his walking and standing abilities.").

Second, both the Magistrate Judge and Ms. Lambert incorrectly argue that the ALJ had to show Ms. Lambert was able to stand or walk for six hours in an eight-hour workday.  (Report 8; Pl.'s Resp. 3.)  This ability is required to perform a *full range* of light work.  SSR 83-10.  The ALJ found, however, that Ms. Lambert could perform a *limited range* of light work at jobs of significant number in the national economy.  (Tr. at 22.)  A limited range of light work does not require this standing and walking durational requirement.  SSR 83-10.

Third, "evidence must be based on the record as a whole."  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  Although "[t]he medical opinions and diagnoses of treating

physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference," "[t]his is true . . . only if the treating physician's opinion is based on sufficient medical data." *Id.* Because (1) the evidence in Dr. Perkowski's evaluation seems self-contradictory, and (2) there is no objective medical evidence in the record indicating that Ms. Lambert's lower extremities were impaired, Dr. Perkowski's evaluation is not controlling under any reading. *See id.* The ALJ looked at the record as a whole, however, to determine that Ms. Lambert was able to perform a limited range of light work at jobs of significant number in the national economy. (Tr. at 17-22.) The court finds that the ALJ's analysis of the record as a whole supports the conclusion that Ms. Lambert was not disabled.

### 2. There is substantial evidence that Ms. Lambert was not disabled.

The ALJ found Ms. Lambert not disabled based on the testimony of a vocational expert, Mr. Yi, who stated that Ms. Lambert could perform a limited range of light work at jobs of significant number in the national economy. (Tr. at 22, 458-65.) Dr. Perkowski's evaluation supports this conclusion. *See* 20 C.F.R. § 404.1567(c) (West 2010) ("If someone can do medium work, we determine that he or she can also do sedentary and light work."). Moreover, evidence of an ability to perform daily activities supports a finding that a claimant can perform at least light work. *See Warner*, 375 F.3d at 391 ("[T]hat Warner could lift regularly up to ten pounds is consistent with Warner's own testimony regarding his ability to perform household activities."). Here, Ms. Lambert testified that she was able to drive her car and perform substantially all of her housework. (Tr. at 454.)

Despite her physical ailments, Ms. Lambert herself identified her *mental* ailments as

the primary reason for her claimed inability to work, not her physical ailments.  (Tr. at 451, 457.)  This testimony cuts against evidence that she could not sit, stand, or walk consistently enough to perform medium or light work.  *See Warner*, 375 F.3d at 391 (finding that testimony from the claimant, explaining that the reason for seeking disability benefits was chronic pain in the hands, cut against the treating physician's evaluation that the claimant's standing and walking abilities were impaired).  As the Commissioner points out, "[t]he record describing [Ms. Lambert's] physical condition does not indicate the diagnosis or treatment of any physical impairment that would preclude her from performing light work."  (Def.'s Objection 3.)

Considering both her physical and mental limitations, the ALJ found that Ms. Lambert could perform only a limited range of light work.  (Tr. at 16-22.)  Therefore, he properly continued his inquiry into whether there were any jobs of significant number in the national economy that Ms. Lambert could still perform.  (Tr. at 22.); *see Harris*, 756 F.2d at 434.  At this stage of the inquiry, "[a] determination that an individual is disabled shall be made only if [her] physical or mental impairment or impairments are of such severity that [she] . . . cannot, considering [her] age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* (internal quotations omitted).  Based on the testimony of Mr. Yi, the ALJ determined that there was substantial gainful work in the national economy that Ms. Lambert could perform.  (Tr. at 22, 461-62.)

"A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."  *Smith*,

10

307 F.3d at 378. In *Smith*, "the ALJ described Smith's work experience and physical restrictions to the vocational expert, and characterized his mental impairment as limiting him to jobs that are routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery." *Id.* Then, the ALJ "asked the expert whether Smith could perform jobs existing in significant numbers in the national economy despite his impairments." *Id.* "The expert identified four such jobs." *Id.* The Sixth Circuit affirmed the district court's finding that the claimant was not disabled, despite the fact that the ALJ had not mentioned in his hypothetical that the claimant "often" suffered mental ailments. *Id.*

Here, the ALJ proposed a hypothetical to Mr. Yi conforming to Ms. Lambert's condition:

> Let me propose a hypothetical worker to you. The hypothetical worker, Mr. Yi, is 44 years old, high school graduate, no currently relevant vocational training. Exertionally this hypothetical worker can do a range of light work. And specifically what I mean by that is the hypothetical worker can sit, stand or walk for six hours each during an eight hour day. Lift, carry, push, or pull ten pounds frequently and 20 pounds occasionally. All with normal breaks. The hypothetical worker is limited to handling and fingering on a frequent basis. Finally, the hypothetical worker is limited to simple, routine, [low] stress tasks where there is limited and superficial interaction with supervisors, coworkers and the public. And where there's no requirement for arbitration, confrontation, negotiation, directing the work of others or being responsible for the safety of others.

(Tr. at 460-61.) After posing the hypothetical, the ALJ asked whether such a hypothetical worker could perform any of the work that Ms. Lambert had performed in the past. (Tr. at 461.) Mr. Yi answered she could perform at least one—warehouse merchandise pricer. (Tr. at 461.) The ALJ then asked whether such a hypothetical worker could perform any other

11

jobs of significant number in the national economy. (Tr. at 461-62.) Mr. Yi testified to three such jobs of significant number: housekeeping, small products assembling, and order filling. (Tr. at 22, 462-63.) This is substantial evidence that Ms. Lambert is not disabled. *See Smith*, 307 F.3d at 378.

An ALJ's decision based on substantial evidence may not be overturned simply because there also happens to be substantial evidence in the record—or even a preponderance of evidence—to support a different conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). The Magistrate Judge correctly pointed out that Dr. Perkowski's evaluation is "equivocal," (Report 8) and that two letters from Dr. Perkowski and Ms. Lambert's former treating physician, Dr. Yutzy, suggest that Ms. Lambert's physical and mental aliments adversely impacted her ability to work. (Report 8-9.) But contrary evidence does not invalidate an ALJ's determination so long as the ALJ found substantial evidence to support his or her determination—even if this Court disagrees with that outcome. *See Jones*, 336 F.3d at 477; *Rogers*, 486 F.3d at 241.

### 3.    The ALJ provided insight regarding how he made his decision.

The ALJ wrote a seven-page decision when he determined that Ms. Lambert was not disabled. (Tr. at 16-22.) Although he understood that Dr. Perkowski's evaluation supported a finding that Ms. Lambert was able to perform a full range of medium work, the ALJ proceeded through the five-step analysis and concluded that Ms. Lambert could perform *not* medium work, but only a limited range of light-work jobs that existed in substantial number in the national economy. (Tr. at 16-22.) In determining Ms. Lambert's residual functional capacity, the ALJ wrote a five-page analysis considering both Ms. Lambert's physical and

mental impairments as indicated by all of the evidence. (Tr. at 17-21.) It is not clear what other kind of "insight," or how much more "insight" the Magistrate Judge believes the ALJ should have given in his decision.

In some instances, an ALJ is required to provide thorough explanations for his or her determinations. For example, when an ALJ rejects the opinion of a claimant's treating physician, the ALJ must provide "good reasons" for his or her rejection. *Rogers*, 486 F.3d at 242. An ALJ also must explain with sufficient clarity the reasons for his or her credibility determinations. *Id.* at 248; SSR 96-7p, 1996 WL 374186 (S.S.A.). Neither of these circumstances are at issue here. The ALJ did not reject Dr. Perkowski's evaluation, and he did not question anyone's credibility. (*See* Tr. at 20.) He weighed Dr. Perkowski's evaluation and Ms. Lambert's testimony, along with all the other evidence before him, and concluded that Ms. Lambert could perform only a limited range of light work. (Tr. at 17-22.)

It is also not clear what the Magistrate Judge meant by criticizing the ALJ's written decision for not providing "insight into the ALJ's view as to the import of SSR 83-10 as it applies to the plaintiff (if he considered it at all)." (Report 8.) This is neither a substantive nor procedural requirement for ALJs when making their decisions. *See Rogers*, 486 F.3d at 241-43, 248. And although the ALJ did not *cite* to SSR 83-10 in his written decision, he certainly considered Ms. Lambert's condition in light of that Ruling's definitions of medium and light work. *Compare* (Tr. at 17) *with* SSR 83-10.

Because "insight" is not part of the standard for reviewing an ALJ's decision, and because the ALJ did provide a thorough description of his analysis of Ms. Lambert's claim, the Court finds that there was no deficiency in the ALJ's analysis or decision.

13

### III. CONCLUSION

The record demonstrates: (1) the ALJ did not make erroneous findings of fact; (2) the ALJ based his decision on substantial evidence from the record; and (3) the ALJ sufficiently explained how he came to his conclusions. For these reasons, the Court REJECTS the Magistrate Judge's Report and Recommended Decision, and AFFIRMS the ALJ's decision.

IT IS SO ORDERED.


 S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge


February 11, 2010